# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1955

_____

| | |
|---|---|
| Sharon Hesse, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Avis Rent A Car System, Inc., | * |
| | * |
| Defendant - Appellee. | * |
| _____ | * |
| | * |
| Equal Employment Advisory Council, | * |
| | * |
| Amicus on Behalf of Appellee. | * |

_____

Submitted: November 18, 2004
Filed: January 10, 2005

_____

Before MURPHY, LAY, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Sharon Hesse brought this Title VII case against her former employer Avis Rent A Car System, Inc., alleging sexual harassment, gender discrimination, and retaliation. Avis moved for summary judgment, arguing that it had responded to Hesse's complaints and that her layoff was part of a reduction in force necessitated by the loss of business after the terrorist attacks in September 2001. Hesse also

sought summary judgment. The district court[1] granted summary judgment to Avis, and Hesse appeals. We affirm.

I

Hesse began working for Avis at the Minneapolis St. Paul International Airport in April 1995 as a customer service representative. Later she became a rental agent, and in August 1998 she was promoted to a clerical position under the supervision of Terry Braaten, a Maintenance and Damage (M & D) manager. Then Hesse took a newly created permanent administrative position as the M & D clerk reporting to Braaten. In 1999 she began to work under the supervision of another M & D manager, Rodney Johnson, and she soon began to experience difficulties in her relationship with him.

Particularly significant to Hesse's claims here is an incident that took place on November 17, 1999. On that day Hesse saw that Johnson was meeting with Braaten, but she did not know what they were talking about. When Johnson came out of Braaten's office, he went into Hesse's work area where she was seated at her desk. She says he paced around and then walked up to her, kicked her desk, and pushed her chair into the desk. Hesse stood up and protested, but Johnson pushed her chair again. The two then went to speak to Terry Wallner, who was the Twin Cities manager and Johnson's supervisor.

Wallner met with Hesse and Johnson in her office. After listening to Hesse's version of the incident, Wallner said she would speak with each employee individually. Hesse returned to her desk, and Wallner talked with Johnson about the incident. Later that day Hesse saw Wallner and Johnson laughing and joking in the

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

2

hallway, and she concluded that Wallner was not going to respond to her complaint. After leaving work for the day, Hesse placed a 911 call to the Bloomington Police Department, accusing Johnson of assault.

When Hesse reported for work the next morning, Wallner met with her to discuss her concerns about Johnson and her report to the Bloomington police. Hesse told Wallner that Johnson had been intimidating and harassing her. She stated that he frequently clapped his hands together loudly, knocked on the glass that separated her office from the garage area, yelled, and deliberately squeaked his tennis shoes to create a loud noise. She also felt that Johnson badgered her about her job performance. Wallner advised Hesse to report her concerns to Denise Jacobson, the human resources manager, and Hesse met with Jacobson that day.

Wallner met with Johnson the next day and counseled him to cease the clapping, squeaking, banging, and yelling. Both Wallner and Jacobson met with Hesse the following week and assured her that Johnson's noisemaking would stop. Hesse suggested that Johnson should be sent to an anger management class, and Avis responded by sending him to a class for managers. Jacobson subsequently followed up with Hesse to check whether Johnson's conduct had improved.

Hesse admits that Johnson's noisemaking subsided after she complained about his conduct, but she claims that he did not forgive her for calling the police. He became very critical of her work and referred to the 911 call in conferences with her and with other supervisors.[2] Hesse made no additional complaints about Johnson's behavior, however.

---

[2]The Bloomington police dismissed Hesse's assault complaint as unfounded two days after her call.

3

Johnson and Hesse had another conflict in October 2000. He shouted a question to Hesse from his office, and she refused to answer. Johnson came out of his office, visibly angry, and yelled at Hesse. She threatened to call the police if he did not leave her alone. Johnson immediately reported Hesse's threat to Wallner, who advised Hesse to leave the work area if she felt threatened. Johnson submitted a written complaint to Wallner, stating that Hesse was hindering his job performance, that he did not want to be threatened by her anymore, and that he could not manage her because of her threats to call 911 and her accusations of abuse.

In November 2000 Wallner convened a meeting with Hesse and Johnson to discuss their issues. Terry Braaten and Denise Jacobson also attended. Hesse told Johnson that she did not like him to yell at her or repeatedly ask her questions, and Johnson raised his concerns that Hesse was spreading unfounded rumors about him. Wallner explained what she expected from both employees and directed Braaten to act as an intermediary between them.

According to Hesse, Johnson's noisemaking increased in the last half of 2001 and he was overly critical of her work. Johnson told Braaten and Hesse in May that he was not going to give Hesse any more work, and he did not. Hesse claims that her husband, also an Avis employee, was working with Sheila Sexauer one day when he saw Johnson act inappropriately. He saw Johnson appear and pound loudly on the window to get Sexauer's attention. Neither Johnson nor Sexauer recalls this incident.

After the September 11, 2001 terrorist attacks, the rental car business fell off and Avis decided to reduce its fleet of cars. Headquarters instructed Wallner to cut the size of her payroll. In November 2001, Waller laid off Hesse and thirteen males. The men included five service agents responsible for cleaning cars, five shuttlers or drivers, two customer service representatives, and one shift manager. In addition to the layoffs, two full time employees in the dispatch area had their positions reduced to part time. Wallner had had two clerical positions under her supervision; one of

4

which was Hesse's position as M & D clerk. In that job, Hesse assisted Braaten and Johnson by doing paperwork, making telephone calls, and assisting callers. Wallner testified in her deposition that she eliminated Hesse's position because she had two M & D managers who could take on Hesse's responsibilities, and Braaten and Johnson did take them over. A part time male driver with less seniority than Hesse continued to work part time as a driver in the M & D area. In her layoff notice, Hesse was informed that she could be called back to her "respective job classification" within one year.

Hesse complains that the thirteen males who were laid off were called back to work, but she was not. She says that at the time of her layoff, two people continued to be trained as rental sales agents even though she had expressed an interest in returning to that job classification. Hesse also learned from her husband that Avis was still hiring to fill a rental sales agent position after the layoff. She never applied for it even though she checked it out on the internet.

After she was laid off and was not called back, Hesse sued Avis in state court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She alleged sexual harassment, gender discrimination, and retaliation. Avis removed the case to federal court, and the parties filed cross motions for summary judgment. The district court granted summary judgment to Avis after concluding that Hesse had failed to demonstrate a triable case of sexual harassment, gender discrimination, or retaliatory discrimination. It ruled that Hesse had failed to produce sufficient evidence that Johnson's treatment of her was based on sex or that his conduct was sufficiently severe or pervasive enough to affect her employment and that Avis could not be held vicariously liable for Johnson's conduct. The court also concluded Hesse failed to make a showing that gender was a factor in her termination or the reason she was not recalled and that she failed to show pretext or causation on her retaliation claim. Hesse then filed this appeal.

5

## II

Hesse asserts on appeal that the district court erred by granting summary judgment to Avis. She argues that Rod Johnson's conduct was based on her sex and created a hostile work environment, that Avis failed to take reasonable steps to stop the harassment, that she was terminated and not recalled to work because of her gender, and that she was laid off in retaliation for her complaints against Johnson. Avis responds that the district court properly found that all of Hesse's claims failed as a matter of law.

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). We review de novo the summary judgment in favor of Avis. Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 841 (8th Cir. 2002). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The respondent must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

### A.

To establish a prima face case that she was subjected to a hostile work environment, Hesse must show that (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected group status; and (4) the harassment affected a term, condition, or

privilege of employment. Dowd v. USW, Local No. 286, 253 F.3d 1093, 1100 (8th Cir. 2001). The conduct must have been severe or pervasive enough to create an objectively hostile or abusive work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). If a plaintiff establishes that a supervisor with authority over her created a hostile work environment, the employer can be vicariously liable. Faragher v. City of Boca Raton, 524 U.S. 775, 780, 804 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 763 (1998). A defending employer can raise an affirmative defense to liability by showing: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765.

Hesse was entitled to protection from discrimination or harassment in her employment at Avis if she can show that it was based on sex. Generalized harassment in the workplace is not illegal under Title VII. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). The critical issue is whether members of one sex are subjected to unfavorable employment conditions to which members of the other sex are not. Oncale, 523 U.S. at 80 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

Hesse argues that even though Rod Johnson's conduct towards her was not sexual in nature, it was related to sex because his harassing actions were directed at women in the office and particularly at her. The record shows, however, that Johnson's loud behavior was directed at both male and female employees. Hesse has acknowledged that everyone in the office was subjected to Johnson's deliberate shoe squeaking and that he clapped his hands loudly to get the attention of male garage technicians. Hesse relies on the incident in which Johnson banged on a window to get Sheila Sexauer's attention, but that incident does not establish that Johnson's

7

conduct was based on sex since he engaged in similar behavior to get the attention of male employees.

In determining whether a hostile work environment existed, evidence concerning all circumstances of the complainant's employment must be considered, including the frequency of the offending conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). To violate Title VII, the conduct must be extreme, and "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Hesse contends that Johnson's kicking her desk and pushing her chair was physically threatening and seriously assaultive. She argues that this was not an isolated incident, but rather the beginning of almost two years of frequent yelling, clapping, squeaking, and banging with many references to her 911 call. She contends that Johnson engaged in a pattern of intimidation in order to prevent her from making another report to the police. Although evidence in the record illustrates that Hesse was upset by Johnson's actions, there is no support in the record for her assertion that he harassed her on a daily or weekly basis for a period of over two years. She agreed in her deposition that Johnson's conduct improved after she complained to her supervisors in November 1999, and she stopped making complaints to management after that. She does allege, however, that his conduct became worse again in the last half of 2001. After reviewing the record, we conclude that Hesse has not made a sufficient showing that Johnson's conduct was so severe or pervasive as to alter a term, condition, or privilege of her employment.

Hesse argues that Avis failed to take reasonable steps to correct Johnson's conduct promptly and effectively. She claims Wallner and Jacobson lacked insight into the need to treat his conduct as sexual harassment. Management failed to direct

8

her to the Avis 800 number to report sexual harassment, and Hesse suggests that the supervisors failed to take action because they were also intimidated by Johnson's conduct. Avis contends that it may not be held vicariously liable for Johnson's conduct because it exercised reasonable care to stop the harassment and Hesse unreasonably failed to take advantage of the company's preventive or corrective procedures.

Wallner met with Hesse and Johnson immediately after the chair incident and again the next day. She encouraged Hesse to discuss her concerns with human resources, and she met with Johnson and instructed him to stop his noisemaking. Within a week, Wallner and the human resources manager Jacobson met with Hesse and assured her that Johnson's conduct would improve. Avis sent Johnson to a management class, and Jacobson followed up with Hesse to make sure that she was not having any more problems with him. Hesse acknowledged in her deposition that Johnson's noisemaking diminished after she complained about it and admits that she did not raise it with management again. Hesse concedes that she never characterized her complaint as one of sexual harassment, and she admitted in her deposition that she was aware of the 800 number and was familiar with the Avis harassment policy. We conclude that Avis established an affirmative defense to Hesse's hostile work environment claim.

Since Hesse did not make a sufficient showing of the necessary elements for her hostile work environment claim and Avis may not be held vicariously liable for Johnson's conduct, the district court did not err by dismissing this claim on summary judgment.

B.

Although Hesse alleges that her termination and failure to be recalled were based on her gender, she has not presented direct evidence of that so we review the

9

claims under the McDonnell Douglas burden shifting test. See Griffith v. City of Des Moines, 387 F.3d 733, 736-37 (8th Cir. 2004). Hesse must first demonstrate that she (1) is a member of a protected class; (2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) was treated differently from similarly situated males. Schoffstall v. Henderson, 223 F.3d 818, 825 (8th Cir. 2000). In reduction in force (RIF) cases, a plaintiff must make some additional showing that gender was a factor in her termination. Holley v. Sanyo Mgf., Inc., 771 F.2d 1161, 1165-66 (8th Cir. 1985) (modifying a plaintiff's prima facie burden under the ADEA in RIF cases); Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 483-84 (8th Cir. 1997) (applying similar test in Title VII RIF case). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions, McDonnell Douglas, 411 U.S. at 802, and then back to plaintiff to show that the defendant's reason was pretextual. Id. at 804.

Hesse argues that her layoff and the failure to recall her were discriminatory and that the reasons supplied by Avis were pretextual. She asserts that she was the only woman among the fourteen who were terminated, that the men were called back to work and she was not despite her seniority, that a part time driver continued to work in her M & D area, that Avis was still hiring customer service positions at the time of the layoff, and that management failed to offer her reduced hours rather than termination.

Hesse failed to meet her prima facie burden of proof because she did not show that she was treated differently from similarly situated males in terms of the layoff or recall or that her gender was a factor. Hesse presented no evidence that there were similarly situated male employees who were not terminated. Even though Avis retained a part time driver in M & D, he was not similarly situated to Hesse because she held a clerical position. Hesse's termination notice specifically stated that she would be eligible to be recalled to her respective job classification, and she has not

10

shown that anyone was hired to fill the position of M & D clerk or that any male employees were called back to a new job classification.

Even if she had made a prima facie case, Hesse also did not show that the reasons Avis gave for the layoff or failure to recall were pretextual. Avis produced evidence to show that Hesse's position as M & D clerk was eliminated for economic reasons after the downturn in the travel industry following the 2001 terrorist attacks. Wallner was instructed to reduce her workforce, and she decided to eliminate Hesse's position and divide her work responsibilities between Braaten and Johnson. Avis also produced evidence that Hesse was eligible to be recalled only to her respective job classification as M & D clerk, and that job had been eliminated. Hesse has admitted that she did not apply for any of the job openings posted after her termination.

After reviewing the record, we conclude that Avis was entitled to summary judgment on Hesse's gender discrimination claim.

## C.

The opposition clause of Title VII prohibits retaliation against an employee for opposing "any practice made an unlawful employment practice by this title." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliatory discrimination, Hesse must show (1) that she engaged in activity protected under Title VII; (2) that an adverse employment action was taken against her; and (3) that there was a causal connection between the two. Brower v. Runyon, 178 F.3d 1002, 1005 (8th Cir. 1999). The McDonnell Douglas analysis also applies to claims of retaliation. Montandon v. Farmland Indus., 116 F.3d 355, 359 (8th Cir. 1997).

Hesse contends that Avis terminated her employment in retaliation for her complaints about Johnson's behavior and her 911 call. She argues that a causal

11

connection was shown between her termination in November 2001 and her 1999 complaints and 911 call, in that Johnson and she had continuing conflict throughout the period and his references to the 911 call continued. Johnson also ceased giving work to Hesse in May 2001, just six months prior to her termination.

Avis responds that there is no causal connection because Johnson played no role in its decision to terminate her employment. It also contends that Hesse's 911 call was not protected activity and that her complaints to management were not protected under Title VII because she never complained of sexual harassment, Hunt v. Nebraska Pub. Power Dist., 282 F.3d 1021, 1028-29 (8th Cir. 2002) (employee not engaged in protected activity when her complaints failed to attribute employer's actions to sex discrimination), and because no one could reasonably believe that Johnson's conduct violated Title VII. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (employee's complaint not protected because no reasonable person could believe incident violated Title VII). Avis also argues that Hesse has failed to show that the RIF was a pretextual reason for her termination.

Even if Hesse's complaints to management and her 911 call, made hours after Johnson had kicked her desk and pushed her chair, were protected activity under Title VII, she must still show that a causal connection existed between those events and her termination or that the reasons for terminating her were pretextual. There is evidence that it was Wallner who made the decision to eliminate Hesse's position in response to a downturn in the travel industry, but Hesse argues that the RIF was a pretext for retaliation. She notes that a part time driver continued to work in M & D, Avis was hiring customer service representatives at the time of the layoff, and that part time employees were called back to work but she was not. Hesse has produced no evidence to refute Wallner's statement that she eliminated the position of M & D clerk after she was instructed to reduce the payroll and concluded that Braaten and Johnson would be able to take on the work done by Hesse. Even though a part time driver

continued to work in M & D following the layoff, no one was hired to fill the M & D clerk position and the position no longer exists.

Hesse also failed to show a causal link between her complaints and her termination. More than a temporal connection between an employee's protected conduct and the adverse employment action is required to create a genuine factual issue on causation, Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999), particularly when the time interval is not "very close." Breeden, 532 U.S. at 273-74 (employer's action taken 20 months after complaint suggests no causality). A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive. Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 989 (8th Cir. 1999) (four month gap weakened inference of retaliation). Hesse's 911 call and her complaints to Wallner and Jacobson occurred almost two years before her termination. Hesse produced evidence that Johnson reminded her and her supervisors that he was upset about the 911 call and that he stopped giving her work, but it does not show that she was terminated because of her complaints about him. After Hesse complained about Johnson's behavior, Wallner and Jacobson took steps to ensure that his conduct improved. Johnson was sent to a management class, Jacobson checked on Hesse to make sure that her complaints were addressed, and Wallner set expectations for the behavior of both Johnson and Hesse. Hesse no longer made complaints about Johnson. We conclude that Hesse made an insufficient showing that she was terminated because she complained about Johnson's conduct.

III

Hesse failed to establish a prima facie case of sexual harassment because she did not produce evidence to show that Johnson's conduct was based on sex or that his conduct altered a term or condition of her employment, and Avis established an affirmative defense to the claim. Hesse's gender discrimination claim fails because she was not able to show that her termination or failure to be recalled were based on

13

sex or that Avis' nondiscriminatory reasons for the layoff were pretextual. Finally, Hesse did not produce evidence to show she was terminated in retaliation for her emergency call and complaints about Johnson's conduct. Accordingly, we affirm the judgment of the district court.

_____