# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3534

_____

| | | |
|---|---|---|
| Bethany Reynolds, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| Ethicon Endo-Surgery, Inc.; | * | |
| Dave Burns, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 19, 2006
Filed: July 21, 2006

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Bethany A. Reynolds sued her former employer, Ethicon Endo-Surgery, Inc. (Ethicon), for violating Title VII of the Civil Rights Act. She also sued Ethicon and her supervisor, David E. Burns, for intentional infliction of emotional distress and negligent infliction of emotional distress. The district court[1] granted summary judgment to Ethicon and Burns. Reynolds appeals. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Karen E. Schreier, Chief United States District Judge for the District of South Dakota.

I.

In June 1999, Reynolds began working for Ethicon as a sales representative. In January 2002, Reynolds was transferred to a new division selling medical equipment for bariatric weight-loss surgery. Reynolds became a bariatric account manager (BAM) based in Sioux Falls, South Dakota, with a sales territory in the Dakotas, Minnesota, and parts of Wisconsin. A few months after she became a BAM, Ethicon reorganized the sales territories. Reynolds lost Minnesota and Wisconsin, but added Iowa to her territory.

Shortly after this change, Ethicon management met to discuss further expansion. A report was presented, weighing the "comparative business conditions" of 210 American markets. The report lists each market's total population, its estimated obese population, and whether a BAM was assigned. Sioux Falls, where Reynolds was based, ranks 120 on the list, the lowest-ranked market with a BAM. The second-lowest with a BAM – Las Vegas, Nevada – was 52 on the list.

Reynolds' immediate supervisor (Burns) and other Ethicon representatives discussed eliminating the Sioux Falls territory and instead basing a BAM in Louisville, Kentucky. On August 13, 2002, Reynolds' territory was discussed and it was determined she would be offered a Louisville BAM position. On August 26, Burns emailed human-resources stating that he would proceed with a "territory collapse," necessitating either a separation or relocation package for Reynolds.

On September 4, Reynolds learned she was pregnant. The same day she told Burns about the pregnancy. Reynolds alleges that Burns congratulated her but said to "keep that information to themselves." Additionally, Burns told Reynolds to meet him in Sioux Falls on September 11, seven days earlier than originally planned, to review her performance evaluation. During that meeting Burns informed Reynolds about the elimination of her specific territory and gave her a letter detailing a

relocation package and transfer to Louisville, or alternatively, a severance package. If she accepted relocation, Reynolds would maintain the same title, pay and advancement prospects as she had as the Sioux Falls BAM. Reynolds had from September 18 to 20 in order to decide; if she chose severance, her last day of work was October 28. Between September 16 and 18, Reynolds was also offered the option of taking the BAM position in St. Louis.

Reynolds told Ethicon she would not make a decision until after her baby was born. Her due date was May 1, 2003; however, in late September she suffered a miscarriage. Reynolds claims the elimination of her position and the manner of notification caused the miscarriage and subsequent diagnosis of depression.

On October 22, Ethicon informed Reynolds that the options to transfer remained open. Ethicon also extended her last day from October 28 to November 28, 2002. Reynolds was eventually terminated because she refused to transfer.

## II.

This court reviews the grant of summary judgment de novo, viewing the facts most favorably to the non-moving party. *See McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1136 (8th Cir. 2006); *Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 619 (8th Cir. 2006). Summary judgment is appropriate if the records "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56 (c)**; *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The respondent must do more than rely on "allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 629 (8th Cir. 2005), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Title VII of the Civil Rights Act of 1964 prohibits discrimination against an employee with respect to their compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex or national origin. *See* **42 U.S.C. § 2000e-2(a)(1) (2004)**. Because Reynolds does not present direct evidence of discrimination, this court analyses the case under the burden-shifting standard in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Griffith v. City of Des Monies*, 387 F.3d 733, 736-37 (8th Cir. 2004). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518 (1993).

Reynolds must first demonstrate that she is within a protected class, qualified to perform her job, suffered an adverse employment action, and was treated differently from similarly-situated employees. *See McDonnell Douglas*, 411 U.S. at 802. *See also Hesse*, 394 F.3d at 631, *citing Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000).

Reynolds is within a protected class and qualified to perform her job. The parties dispute whether she suffered an adverse employment action in circumstances which allow a court to infer unlawful discrimination. *See McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir. 1995). An adverse employment action is a "tangible change in working conditions that produces a material employment disadvantage." *Jones v. Reliant Energy-ARKLA*, 336 F.3d 689, 691 (8th Cir. 2003).

Reynolds repeatedly cites the proposition that whether there is an adverse action is an issue of fact for the jury. *See MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 928 (8th Cir. 2004). This proposition assumes that specific facts support the element of an adverse action sufficient to raise a genuine issue for the jury. *See Hesse*, 394 F.3d at 629.

Reynolds claims that her separation is "beyond dispute" an adverse employment action. She relies on *MacGregor*, which holds that "where an employer offers to substitute a new job for one that has been eliminated, the employee's rejection of the new job does not necessarily indicate that the employee has resigned." ***MacGregor***, 373 F.3d at 928. The key to *MacGregor* is that the position offered was "sufficiently inferior to constitute an adverse action." ***Id.*** at 929. Reynolds does not dispute that she was offered a lateral transfer with the same job title, salary and advancement prospects as the job she held in Sioux Falls. Reynolds voluntary rejected equivalent positions, even when Ethicon extended the decision deadline for weeks after she miscarried. Although Reynolds would have preferred to remain in Sioux Falls, the employer's disregard of this preference is not an adverse employment action.[2] *See* ***Gartman v. Gencorp Inc.***, 120 F.3d 127, 130 (8th Cir. 1997) (reversing verdict for an employee forced to choose between resigning and transferring to a position with the same title, duties, pay and benefits, because the transfer offer was not an adverse action).

Alternatively, Reynolds claims that the May and June elimination of Minnesota and Wisconsin from her sales territory, in itself, is an adverse action. However, in both her charge of discrimination and her complaint in this case, she failed to allege anything about this change. Her charge and complaint are restricted to events between August and November 2002. "Ordinarily, we do not consider an argument raised for the first time on appeal. We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result." ***Berkley v. Dillard's Inc.***, 450 F.3d 775, 778 (8th Cir. 2006), *quoting* ***Orr v. Wal-Mart Stores, Inc.***, 297 F.3d 720, 725 (8th Cir. 2002) (internal

---

[2]In her reply brief to this court, Reynolds asserts for the first time that a transfer to Louisville would be a sufficiently inferior position because her pay, in part, was based on commissions and because she was not as familiar with Louisville as with Sioux Falls. To the contrary, the record supports that her pay and other benefits in Louisville (or St. Louis) would be the same as in Sioux Falls.

citations omitted). *See generally* **Harlston v. McDonnell Douglas Corp.**, 37 F.3d 379, 382 (8th Cir. 1994).

Because Reynolds has not proven that she suffered an adverse employment action, her Title VII claim fails.

III.

Reynolds also asserts that Ethicon and Burns are liable for intentional infliction of emotional distress (IIED) for informing her about the elimination and relocation in a distressing manner. She claims that Burns, knowing she was pregnant, continued to let her believe the purpose of their September 11th meeting was to review her performance. Instead, Burns then notified Reynolds about the elimination of her territory and possible relocation. As a result of Burns' conduct, Reynolds asserts she suffered a miscarriage and sought treatment for depressive symptoms, all proximately caused by the stress she endured.

Under South Dakota law, the elements of intentional infliction of emotional distress are:

> (1) an act by defendant amounting to extreme or outrageous conduct;
> (2) intent on the part of the defendant to cause plaintiff severe emotional distress;
> (3) the defendant's conduct was the cause in-fact of plaintiff's injuries; and
> (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

*Petersen v. Sioux Valley Hosp. Ass'n*, 486 N.W.2d 516, 518 (S.D. 1992).

In South Dakota, following the Restatement (Second) of Torts, "the conduct necessary to form intentional infliction of emotional distress must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.'" *Harris v. Jefferson Partners, L.P.*, 653 N.W.2d 496, 500 (S.D. 2002), *quoting* *Richardson v. East River Elec. Power Coop.*, 531 N.W.2d 23, 27 (S.D. 1995). The IIEP tort "imposes liability on the defendant for intentional *and* reckless conduct resulting in emotional distress." *Petersen v. Sioux Valley Hosp. Ass'n*, 491 N.W.2d 467, 468 (S.D. 1992).

One basis for such extreme and outrageous conduct is "the defendant's knowledge that the plaintiff is especially sensitive, susceptible, and vulnerable to injury through mental distress at the particular conduct." *Harris*, 653 N.W.2d at 502, *quoting* **The Law of Torts** § 12, 62 (5th ed 1984). The facts of this case do not support the tort. Unlike *Moysis v. DTG Datanet*, 278 F.3d 819, 827 (8th Cir. 2002), where the employer knew that plaintiff's medical condition made him particularly vulnerable to emotional distress, Reynolds did not suffer from a severe medical problem making her vulnerable to emotional distress. *See* *Wangen v. Knudson*, 428 N.W.2d 242, 248 (S.D. 1988) (finding IIED where employer knew employee was recently hospitalized for depression but terminated him under the pretense that employee failed to attend alcohol treatment). Nor does Reynolds even allege that Burns was hostile to her when notifying her about the elimination of her territory and possible relocation. While termination from a job may be upsetting, this does not in itself constitute extreme or outrageous conduct. *See* *Richardson*, 531 N.W.2d at 29. Reynolds has not proven a prima facie case of intentional infliction of emotional distress.

IV.

Reynolds asserts a negligent infliction of emotional distress claim, based on the same evidence invoked for IIED. To prove this claim, a plaintiff must prove (1) negligent conduct on the part of the defendant, (2) emotional distress suffered by the plaintiff, and (3) physical manifestations suffered by the plaintiff from the distress. *See Nelson v. WEB Water Dev. Ass'n*, 507 N.W.2d 691 (S.D. 1993). "The three necessary elements of actionable negligence are: (1) A duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *Blaha v. Stuard*, 640 N.W.2d 85, 90 (S.D. 2002), *quoting Stevens v. Wood Sawmill, Inc*., 426 N.W.2d 13, 14 (S.D. 1988). Reynolds fails to identify a duty that Ethicon or Burns owed her. In an employment-at-will state like South Dakota, the employer owes no duty of continued employment, and therefore may dismiss the employee at any time, for any reason, as long as an employment contract, a statute, or public policy does not indicate otherwise. *See Aberle v. City of Aberdeen*, 2006 SD 60, ¶¶ 20-21, 2006 WL 1851020; *Hollander v. Douglas County*, 620 N.W.2d 181, 185 (S.D. 2000). *See also* **S. D. Codified Laws § 60-4-4**. The district court correctly granted summary judgment on this claim.

V.

The judgment of the district court is affirmed.

_____