# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-2592
_____

May Yang

*Plaintiff - Appellant*

v.

Robert Half International, Inc., also known as Robert Half Corporation, also known as Robert Half Legal; Theresa Hodnett; Marcia A. Miller

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 14, 2023
Filed: August 22, 2023
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

May Yang appeals the district court's dismissal of her claims against Robert Half International, Inc. ("RHI"), Marcia Miller, and Theresa Hodnett. We affirm in part, and reverse and remand in part.

# I.    BACKGROUND

RHI provides legal staffing solutions for its clients.  Yang worked for RHI as a contract attorney performing document review.  Yang was employed on various projects on an as-needed basis.  Defendants Marcia Miller and Theresa Hodnett were Yang's coworkers and had no supervisory duties related to Yang.  Yang alleges that Miller, Hodnett, and other coworkers engaged in a pattern of discrimination and harassment towards her.   Yang's complaint alleges numerous incidents of harassment and discrimination, including in part:

1.      During a political discussion in October 2017, Miller stated, "Look at all these Ukrainian names like 'yourslutsky,'" which Yang interpreted as a "gratuitous swipe to call me a slut."  Yang felt the comment was race-based and directed at her because she was the only female of Asian descent present at the time.

2.      Around September 2018, Yang alleges that Hodnett made derogatory comments towards her, insinuating that she was a "ho" by saying, "Ho-Pee" after Yang said she was "happy."

3.      When a coworker wore a t-shirt with a "Lake Tahoe" emblem, it appears Yang inferred this was an insult directed at her personally because she believed that the "ho" in "Tahoe" was directed at her.  There is no evidence that anyone but Yang drew this inference.

4.      Yang alleges Hodnett would refer to Yang as a "ho" by stringing the states of Oklahoma and Idaho together in a sentence.

5.      On May 2, 2019, Yang and Miller went through a doorway at the same time (the "doorway incident").  Miller opened the door and entered the threshold a moment before Yang.  In the video, Yang appears to push past Miller, Miller is pushed forward slightly and lifts her right leg behind her, appearing to intentionally cause Yang to stumble.  Following the incident, both Miller and Yang accused the other of tripping them.  Neither Yang nor Miller fell or were injured during the incident.

While Yang was working for RHI, she made several reports to RHI claiming harassment, however, she never presented a claim of racial discrimination. At least one report was made against Yang: about a week after the doorway incident, Yang commented to her co-worker, Leanne Dodds, "If I were to insult someone enough, do you think my thighs would get slimmer." According to Dodds, Yang directed it at Hodnett, and while looking at Hodnett asked, "How are we feeling? Is someone uncomfortable?" Dodds reported the comment and RHI conducted an investigation. During the investigation, Yang admitted making the comment, but she said it was not directed at Hodnett. Yang was removed from the project with Hodnett, approximately two weeks earlier than the project would have otherwise ended. Even though RHI removed Yang from this project, it continued to assign other work to Yang throughout the summer of 2019.

Yang filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in July 2019. Yang has alleged that after she filed her EEOC complaint, she received less work. The supervisor in charge of assigning projects to Yang, however, was not even aware that Yang had lodged an EEOC complaint. During the summer of 2019, RHI investigated the various complaints lodged by Yang, Miller, and Hodnett. At the conclusion of the investigation, RHI was unable to independently substantiate or corroborate the allegations but decided that in making staffing assignments it would be best to assign Yang and Miller to different projects. After this decision, Yang complained to RHI that she was not receiving project notifications. RHI admits that Yang and Miller were removed from the mass email notifications previously used to staff projects to ensure neither were assigned to the same projects. Nevertheless, both Yang and Miller continued to be informed of work opportunities up until Yang resigned in October 2019.

Almost immediately after her resignation, Yang commenced this action against RHI, Miller, and Hodnett. Her complaint alleged fourteen counts. The next day Yang amended her complaint to note that her claims were subject to a contractual arbitration agreement, and that she filed the case with the purpose of commencing arbitration but in the event the employer waived arbitration, she was

demanding a jury trial. In January 2020, Yang amended her complaint for a third time—this time to add three more claims. In September 2020, the district court granted Hodnett's and Miller's motions for partial dismissal, dismissing five counts against Hodnett and three counts against Miller.

A scheduling order set February 1, 2021, as the deadline for motions to amend. Yang filed a letter on January 29, 2021, informally asking the magistrate judge to extend the deadline for motions to amend to March 15, 2021, and also asked the magistrate judge to schedule a telephone conference to address discovery and scheduling issues. The magistrate judge denied the request. Yang responded by email requesting that the magistrate judge vacate the order. The magistrate judge denied the request to vacate on the basis that Yang had "disregard[ed] the deadlines in the pretrial scheduling order." Yang objected to the magistrate judge's orders and filed a motion for leave to file a fourth amended complaint seeking punitive damages. On review, the district court overruled her objections and denied her motion seeking leave to amend, finding Yang failed to show good cause to modify the scheduling order and had not complied with the rules when she did not provide a copy of any proposed amendments she would make to the complaint. The court noted that the motions Yang had presented suffered from various procedural defects and rule violations, including the requirement to meet and confer prior to filing. Finally, the court determined that Yang's proposed amendments were futile.

On March 23, 2021, the district court dismissed with prejudice the remaining counts against Hodnett and ordered "Defendant Theresa Hodnett is DISMISSED from the case." On December 7, 2021, the district court accepted a stipulation between Miller, Hodnett, and RHI to dismiss their competing cross-claims. With the dismissal of the cross-claims, Hodnett's involvement in the case terminated but no formal judgment was entered.

On May 20, 2022, the district court entered a judgment dismissing all claims against RHI and Miller. On the day the district court entered its judgment dismissing all claims against RHI and Miller, RHI's counsel asked the district court to formally

enter a judgment dismissing Hodnett. On June 23, 2022, the district court entered a judgment dismissing all claims involving Hodnett. Between May 20, 2022, and June 23, 2022, a flurry of correspondence took place between the parties and the court, ultimately resulting in Yang filing a motion under Fed. R. Civ. P. 59(e) on June 17, 2022.

In the correspondence preceding the filing of the Rule 59(e) motion, Yang filed a letter requesting permission to file a "Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e)." The court neither granted nor denied her motion because Yang had "given no information about this motion." Yang then requested reconsideration, which the district court denied as a "nullity" because Yang had failed to follow the proper procedure for seeking reconsideration and because Yang's reconsideration motion was really an attempt to relitigate issues that had already been decided. The court also noted that even in the absence of a procedural default, it would have denied the motion because Yang had raised no new arguments or evidence that were unaddressed in the court's original rulings. The district court entered cost judgments against Yang.

Yang appeals from the dismissal as to eight counts against RHI: Count 2 "Race and/or National Origin Discrimination" under Title VII of the Civil Rights Acts of 1964 and 1991 ("Title VII"); Count 3 "Race and/or National Origin Discrimination" under the Minnesota Human Rights Act (the "MHRA"); Count 5 "Reprisal Discrimination" under Title VII; Count 6 "Reprisal Discrimination" under the MHRA; Count 8 "Hostile Work Environment" under the MHRA; Count 9 violation of the Minnesota Whistleblower Act; Count 15 "Negligent/Intentional Infliction of Emotional Distress"; and Count 16 "Constructive Discharge" under Title VII.

Yang also appeals from the dismissal of four counts directed at Hodnett and Miller jointly: a claim under 42 U.S.C. § 1981, and three Minnesota state law claims. She also appeals the dismissal of her claim for assault/battery against Miller found in Count 12. In addition, Yang appeals the district court's denial of her motions to

amend the scheduling order, to supplement the record, and to amend the complaint to add punitive damages. Finally, Yang appeals the court's entry of cost judgments against her.

RHI and Hodnett have moved to dismiss the appeal as untimely. Yang filed her Notice of Appeal on July 28, 2022, which is more than thirty days after the entry of both judgments. Yang asserts that her appeals are timely because her motion for reconsideration tolled the time to appeal.

## II.   DISCUSSION

### A. Motions to Dismiss the Appeal

RHI and Hodnett have moved to dismiss the appeal as untimely. On June 17, 2022, Yang filed a "Motion to Amend or Alter Judgment Pursuant to Fed. R. Civ. P. 59(e)" which sought to set aside the district court's May 20, 2022, judgment dismissing all claims against RHI and Miller. On June 23, 2022, the district court entered a judgment dismissing the remaining claims against Hodnett. The district court denied Yang's motion to amend on July 7, 2022. Yang filed her notice of appeal on July 28, 2022.

An appellant must file a notice of appeal with the district court within thirty days of the order or judgment from which the appeal is taken. 28 U.S.C. § 2107(a); see Fed. R. App. P. 3(a)(1). Under Federal Rule of Appellate Procedure 4(a)(4)(A)(iv), a motion to alter or amend a judgment under Rule 59(e) tolls the appeal period. Fed. R. Civ. P. 54(a) defines a "Judgment" as "a decree and any order from which an appeal lies." Here, when the court entered judgment on May 20, 2022, it had the effect of dismissing all claims as against all defendants, as the court's previous order had already disposed of all claims against Hodnett. There is a familiar

maxim in the law—the law does not require vain or useless acts.[1]  Each of the requirements for an effective judgment against Hodnett were satisfied on May 20, 2022.  <u>See</u> <u>Bankers Trust Co. v. Mallis</u>, 435 U.S. 381, 383-84 (1978) (analyzing the separate document requirement of Rule 58 as operating to prevent loss of appeal); <u>see also</u> <u>Smith v. Hudson</u>, 600 F.2d 60, 62 (6th Cir. 1979) (rejecting the defendants' argument that the plaintiffs' motion could not properly be treated as a Rule 59(e) motion because it was made prior to the entry of judgment).

Yang filed her Rule 59(e) motion 28 days after the entry of a judgment, which when combined with the previous orders dismissing all of the claims involving Hodnett had the effect of resolving the entire action.  Even if the motion was technically premature, we do not view it as a nullity but rather dormant until the formal judgment was entered.  To require the refiling of an identical motion would have been a useless act under the circumstances here.  Under these facts, Yang's Rule 59(e) motion tolled her time to appeal.  The motions to dismiss the appeal are denied.

## B. Procedural Issues

Yang appeals the district court's denial of her motions to amend the scheduling order, to supplement the record, and to amend her complaint to add punitive damages.

### i.  Yang's Motion to Amend the Scheduling Order

Yang argues the district court abused its discretion in affirming the magistrate judge's order that denied her request to amend the scheduling order.  We review the denial of a motion to modify the scheduling order for an abuse of discretion.  <u>See</u> <u>Zick v. Paccar, Inc.</u>, 47 F.4th 672, 678 (8th Cir. 2022).

---

[1]*Quod vanum et inutile est, lex non requirit*. "The law does not require what is vain and useless."  Black's Law Dictionary, app. A at 1684 (7th ed. 1999).

A district court possesses broad discretion when it establishes and enforces deadlines in its scheduling orders. Petrone v. Werner Enters., Inc., 940 F.3d 425, 434 (8th Cir. 2019). Once a scheduling order has been adopted by the district court, it may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This Court has stated that "the primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Hartis v. Chi. Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012).

The district court's scheduling order required that any motion to amend the pleadings be filed not later than February 1, 2021. On January 29, 2021, Yang sent a letter to the magistrate judge requesting "the February 1, 2021 deadline be reset to March 15, 2021," and to schedule a "discovery status telephone conference" to discuss her request. The magistrate judge held an informal discovery conference on February 8, 2021, and immediately afterward filed a text-only order denying Yang's request to extend the motion deadline. Yang filed an objection, and the district court affirmed the magistrate judge's order, finding Yang had not shown she was diligent in following the scheduling order's requirements and could have raised the issue sooner than she did. Yang's lack of diligence is a finding of fact that we will only reverse on a finding of clear error. We find no error, clear or otherwise. The district court did not abuse its discretion in denying Yang's motion to amend.

ii. Yang's Motion to Supplement the Record

Yang also appeals from a denial of her motion to supplement the record. She claims the record was incomplete because Yang had not received Hodnett's initial discovery responses until after Yang had filed her response to Hodnett's motion for a judgment on the pleadings. The district court denied the motion, noting that in considering a motion for judgment on the pleadings, the court is limited to reviewing the pleadings. See von Kaenel v. Armstrong Teasdale, LLP, 943 F.3d 1139, 1143 (8th Cir. 2019). In addition, the court noted that additional information was unnecessary because the court was bound to accept Yang's factual allegations as true. Under these circumstances, we find no abuse of discretion by the district court

in denying the motion to supplement the record.  See Indep. Sch. Dist. No. 283 v. E.M.D.H., 960 F.3d 1073, 1079 (8th Cir. 2020) (standard of review).

### iii.  Yang's Motion to Add Punitive Damages

In March 2021, Yang moved the district court to allow her to add a claim for punitive damages.  The court denied her motion, finding it was procedurally improper.  The decision to allow a party to amend the complaint is within the sound discretion of the district court and will be overturned only if there is an abuse of discretion.  Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008).

As noted by the district court, Yang's motion was procedurally defective because she did not comply with Local Rule 7.1, which requires that, before "filing a motion . . . the moving party must, if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion" and file a statement attesting that she did so.  While Yang filed a statement, it did not comply with Local Rule 7.1.  Instead, it merely cited a couple of letters Yang's former counsel sent to opposing counsel.  As the district court explained:

> RHI's counsel received a letter simply asking if RHI would "stipulate to allow amendment to the Complaint to add a claim for punitive damages.  Please respond." . . . RHI's counsel also received a few phone calls seeking to "meet and confer" on "discovery matters," to which RHI's counsel offered times to confer, but Yang's counsel never accepted or acknowledged the offer.

The district court found Yang's statement did not comply with the local rules.  The district court has considerable discretion in applying its local rules and we find no abuse of discretion here.  See R.A.D. Servs. LLC v. State Farm Fire & Cas. Co., 60 F.4th 408, 412 (8th Cir. 2023).

**C. Dismissal of Claims Under Rule 12(b)(6)**

Yang appeals the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) of the following claims against Hodnett and Miller: 42 U.S.C. § 1981 claims; defamation claim; and claims of negligent and intentional infliction of emotional distress. We review *de novo* a district court's decision granting a motion to dismiss for failure to state a claim, accepting as true all factual allegations and viewing them in the light most favorable to the non-moving party. Thompson v. Harrie, 59 F.4th 923, 926 (8th Cir. 2023).

i. 42 U.S.C. § 1981 Personal Liability Claims

"While § 1981 prohibits racial discrimination in all phases and incidents of a contractual relationship, the statute does not provide a general cause of action for race discrimination." Gregory v. Dillard's, Inc., 565 F.3d 464, 468 (8th Cir. 2009) (cleaned up). "Any claim brought under § 1981 . . . must initially identify an impaired contractual relationship under which the plaintiff has rights." Id. at 468-69 (cleaned up). To assert a prima facie § 1981 claim, Yang must allege: (1) she was a member of a protected class; (2) discriminatory intent by the defendants; (3) Yang engaged in a protected activity; and (4) the defendants interfered with that activity—the making and enforcement of an employment contract. Id. at 469. Yang asserts the district court incorrectly ruled that co-workers must exert supervisory control over an employee to be held personally liable under a § 1981 race discrimination claim. This is a question of first impression in our Court that we need not address because Yang has otherwise failed to establish a prima facie case of race discrimination.

Yang must present evidence, not merely speculation, of discriminatory intent on Hodnett's and Miller's part to create a prima facie case under § 1981. See Daniels v. Dillard's, Inc., 373 F.3d 885, 887 (8th Cir. 2004). We accept as true Yang's allegations. Yang has alleged that Hodnett used words with the sound "ho" to imply that Yang is a "whore"; that Hodnett made false complaints to RHI supervisory

personnel in an attempt to get Yang fired; that Hodnett encouraged a co-worker to report to RHI that Yang made fat-shaming comments; and that Miller used the term "yourslutsky" as some sort of a racial slur. Other than Yang's inferences which are speculative and unsupported, there are no allegations or facts in the record tying these slurs to Yang's race. Yang's § 1981 claim fails as a matter of law.

Even if we could find some racial motivation, there is no evidence of any interference or attempted interference with Yang's contract with RHI. Yang faces a hurdle as the evidence tends to support a conclusion that she voluntarily left RHI. In addition, the "ho" comments made by Hodnett were made more than eight months in advance of the alleged retaliatory report of Hodnett. The allegations about Miller's "yourslutsky" comments are also remote in time. Yang continued to work for RHI for nearly two years after these alleged incidents. When the time between the alleged discriminatory and retaliatory actions by Hodnett are coupled with Yang's voluntary termination of the employment relationship, Yang has not established that Hodnett or Miller interfered with her employment contract.

Likewise, there is no evidence that RHI interfered with Yang's employment contract. RHI neither suspended nor terminated the employment relationship. Rather, Yang left voluntarily. Yang has not established that RHI's decision to discontinue staffing Miller and Yang on the same projects was based on her race. Both she and Miller were subject to this restriction, and both continued to receive assignments on different projects. The record is silent as to a connection between any actions on the part of RHI and Yang's race or any protected activity. Because Yang cannot establish a prima facie case of discrimination, we affirm the district court's dismissal of her § 1981 claims.

### ii. Defamation Claims

Yang also argues that the district court erred when it dismissed her defamation claims against Miller and Hodnett. To demonstrate defamation under Minnesota law, Yang must allege: (1) there was a published statement of fact; (2) of and

concerning Yang; (3) which was false; and (4) the factual statement damaged Yang's reputation and lowered her estimation in the community. See Lewis v. Equitable Life Assurance Soc'y. of the U.S., 389 N.W.2d 876, 886 (Minn. 1986). Defamation *per se* includes falsely accusing someone of committing a crime or imputing serious sexual misconduct to them. Richie v. Paramount Pictures Corp., 544 NW.2d 21, 25 n.3 (Minn. 1996).

Yang alleges she was defamed by Miller's accusation that Yang tripped her. Because this statement does not accuse her of a crime or serious sexual misconduct, Yang has failed to establish defamation *per se*. As to ordinary defamation, Yang has not pled any fact that would tend to establish any of the allegedly defamatory statements damaged Yang's reputation or lowered her estimation in the community. The district court did not err in dismissing Yang's defamation claim.

Yang also claims that Hodnett made references to Yang as a "ho" by mispronouncing certain words and by engaging in certain word-play involving "ho." Once again, the term "ho" is not defamatory *per se*, and Yang has failed to establish an injury to her reputation. Yang's defamation claim against Hodnett also fails as a matter of law.

### iii. Negligent and Intentional Infliction of Emotional Distress Claims

While Yang contends the district court erred in dismissing her negligent and intentional infliction of emotional distress claims against Miller and Hodnett, her briefing makes no argument related to her intentional infliction of emotional distress claim and has been abandoned.

To state a claim for negligent infliction of emotional distress, Yang must plead facts indicating she (1) was within a zone of danger of physical impact; (2) reasonably feared for her own safety; and (3) "suffered severe emotional distress with attendant physical manifestations." Thomsen v. Ross, 368 F. Supp. 2d 961, 977 (D. Minn. 2005). Yang argues the district court misapplied the "zone of danger"

test because Minnesota recognizes an exception to the test that allows recovery for "mental anguish or suffering upon a direct invasion of his or her rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct." Bohdan v. Alltool Mfg., Co., 411 N.W.2d 902, 907 (Minn. Ct. App. 1987).

Bohdan, as an opinion of the Minnesota intermediate appellate court, is tenuous authority. The Minnesota Supreme Court has never extended the zone of danger as far as the Bohdan court so we must determine the Minnesota Supreme Court's "probable decision on the issue by reference to its analogous case law, relevant decisions of the state's lower courts, and other potentially elucidating state law materials." Eichenwald v. Small, 321 F.3d 733, 736 (8th Cir. 2003).

We think it highly improbable that the Minnesota Supreme Court would recognize this exception. In Stadler v. Cross, 295 N.W.2d 552, 555 (Minn. 1980), the court refused to extend negligent infliction of emotional distress liability to cases in which the plaintiff is not in the zone of danger. See also Langeland v. Farmers State Bank of Trimont, 319 N.W.2d 26, 32 (Minn. 1982) ("We therefore must hold that lacking a showing of injury beyond that allegedly arising from their emotional distress, the [plaintiffs] may not recover damages."). The district courts in Minnesota have consistently applied the zone of danger approach over a period of decades. See, e.g., Meyer v. Tenvoorde Motor Co., 714 F. Supp. 991, 994-95 (D. Minn. 1989) (finding Bohdan directly at odds with the Minnesota Supreme Court's refusal to relax the "zone of danger" requirement); Armstrong v. Target Corp., No. Civ.10-1340 RHK/SRN, 2010 WL 4721062, at *5 (D. Minn. Nov. 15, 2010) ("The Minnesota Supreme Court recognizes no exception to the 'zone of danger' requirement for [negligent infliction of emotional distress]."). We predict the Minnesota Supreme Court would not abandon the zone of danger requirement but even if it did, Yang is unable to state a claim for defamation, malicious prosecution, or other willful, wanton, or malicious conduct sufficient to state a claim for negligent infliction of emotional distress.

-13-

**D. Summary Judgment**

Yang appeals the district court's adverse grant of summary judgment. "We review a grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Richardson v. Omaha Sch. Dist., 957 F.3d 869, 876 (8th Cir. 2020) (cleaned up). "Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." Leonard v. St. Charles Cnty. Police Dep't, 59 F.4th 355, 359 (8th Cir. 2023) (cleaned up); see also Fed. R. Civ. P. 56(a)).

i. Discrimination and Retaliation Claims Against RHI

Yang alleges claims against RHI of race discrimination under § 1981, Title VII, and the MHRA, and of reprisal under Title VII and the MHRA. We apply the same analysis to Title VII and MHRA claims when they are based on identical facts and theories. See Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011). We analyze both Title VII and § 1981 claims under the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lake v. Yellow Transp., Inc., 596 F.3d 871, 873 n.2 (8th Cir. 2010).

To establish a prima facie case of discrimination under the McDonnell Douglas framework, Yang must show: (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. Faulkner v. Douglas Cnty., 906 F.3d 728, 732 (8th Cir. 2018). A plaintiff can create an inference of discrimination by showing that she was treated differently than similarly situated persons who are not members of the protected class. Id. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Id. If the employer shows a legitimate nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to establish pretext. Id.

-14-

Yang's claim fails for several reasons. First, she suffered no adverse employment action, as the record only supports a voluntary separation. Second, RHI was never aware that Yang believed she was being discriminated against based on her race because Yang never bothered to inform RHI of her concerns. Finally, Yang was not treated differently from other coworkers who were not Asian. The complained of employment action, being separated from Miller on projects resulting in fewer opportunities, was even-handed without any consideration of race. Both Miller and Yang amply demonstrated that they were unable to work together, and separation was a legitimate employment decision. Although Yang was removed from a single project, it was because of her own misconduct—improperly discussing Hodnett's weight. With regard to Yang's allegations about retaliation, which stem from her filing an EEOC complaint, the person she claims retaliated against her had no knowledge that Yang had filed an EEOC complaint. RHI is entitled to summary judgment on these claims.

## ii. Hostile Work Environment and Constructive Discharge Claims

Yang appeals the district court's dismissal of Counts 8 and 16, which alleged RHI created a hostile work environment, in violation of the MHRA, and constructively discharged her, in violation of Title VII.

To establish a prima face case of a hostile work environment, Yang is required to show: (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected group status; and (4) the harassment affected a term, condition, or privilege of employment. Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 629 (8th Cir. 2005). "The conduct must have been severe or pervasive enough to create an objectively hostile or abusive work environment." Id. Title VII does not prohibit general workplace harassment. Id. at 630.

In determining whether a hostile work environment existed, all circumstances of Yang's employment must be considered, "including the frequency of the

offending conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with work performance." Id. Upon careful review of the record, Yang's hostile work environment claims fail because even accepting her factual allegations as true, there is no evidence that Yang was subjected to severe, physically threatening, or humiliating harassment. Accepting her claims about the doorway incident as true, there is no evidence that Miller tripped Yang frequently or that her conduct was based on Yang's race. Yang has not pointed to evidence establishing a causal connection between her co-workers' conduct and her race. We affirm the dismissal of Yang's hostile work environment claims.

To establish a prima facie case of discriminatory discharge, Yang must show: (1) she was a member of a protected class; (2) she was capable of performing the job; and (3) she was discharged from the job. See Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996). Yang has met the first two elements of this test. Because Yang was not terminated, she must show she was constructively discharged. See id.

To constitute constructive discharge, Yang must demonstrate that RHI deliberately created intolerable working conditions with the intention of forcing her to quit and she did quit. See id. "A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable." Id. Yang argues RHI constructively discharged her based on her reassignment from a project with Hodnett and RHI's decision to staff Yang and Miller separately. Yang, however, was still being staffed on other projects. "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Id. at 496 (quoting Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)).

After carefully reviewing the record and viewing the evidence in a light most favorable to Yang, there is no indication that RHI acted with the intention of forcing Yang to resign or that Yang's resignation was a reasonably foreseeable consequence of RHI's actions. Nor do the allegations support a conclusion that RHI maintained

working conditions that were intolerable. Without this evidence, a finding of constructive discharge is unsustainable.

      iii.  <u>Whistleblower Claims</u>

The Minnesota Whistleblower Act prohibits employers from retaliating against an employee who "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law." Minn. Stat. § 181.932 (1). Minnesota applies the <u>McDonnell Douglas</u> framework to these claims. <u>Cokley v. City of Otsego</u>, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

To establish a prima facie case, Yang must demonstrate: (1) she engaged in statutorily-protected conduct; (2) RHI took adverse employment action; and (3) a causal connection between the two. <u>Id.</u> Because Yang suffered no adverse employment action, her whistleblower claims fail as a matter of law.

      iv.  <u>Negligent Infliction of Emotional Distress/Intentional Infliction of Emotional Distress Claims Against RHI</u>

Yang alleges both negligent infliction of emotional distress and intentional infliction of emotional distress against RHI. Because Yang did not allege anything about the zone of danger or even address it in her summary judgment motion, the district court did not err in granting summary judgment in favor of RHI on Yang's negligent infliction of emotional distress claim. <u>See</u> <u>Thomsen</u>, 368 F. Supp. 2d at 977 (listing zone of danger as an element for a negligent infliction of emotional distress claim).

Under Minnesota law, a person asserting a claim for intentional infliction of emotional distress must establish: (1) the conduct is extreme and outrageous; (2) the conduct is intentional or reckless; (3) the conduct causes emotional distress; and (4) the distress is severe. <u>Fredin v. Middlecamp</u>, 500 F. Supp. 3d 752, 785 (D. Minn. 2020). Actionable conduct must be "so atrocious that it passes the boundaries of

decency and is utterly intolerable to the civilized community." <u>Id.</u> The relevant conduct at issue here is RHI's continuous employment of Miller following the doorway incident. No reasonable jury could find this conduct rises to the requisite level necessary to establish a claim for intentional infliction of emotional distress. <u>See</u> <u>id.</u> ("[L]iability for intentional infliction of emotional distress does not extend to insults, indignities, threats, annoyances, petty oppressions, or trivialities."). We affirm the grant of summary judgment in favor of RHI on Yang's intentional infliction of emotional distress claim.

> v. <u>Yang's Battery Claim Against Miller</u>

Yang asserts that Miller committed a battery against her during the doorway incident. In Minnesota, battery is an intentional and offensive contact with another person. <u>Johnson v. Morris</u>, 453 N.W.2d 31, 40 (Minn. 1990). The district court granted summary judgment in favor of Miller on this claim, finding that Yang had presented no evidence supporting battery because there was no evidence to suggest Miller intended to engage in contact with Yang during the incident.

We have reviewed the video footage of alleged trip and find there is sufficient evidence in the video to create a factual dispute as to whether Miller intended to lift her leg, make contact with Yang, and cause Yang to trip. Because of the factual dispute, summary judgment on this claim is improper. We reverse the district court's grant of summary judgment as to Yang's battery claim and remand for proceedings consistent with this opinion.

> vi. <u>Aiding and Abetting Discrimination</u>

Yang's claims pertaining to aiding and abetting are premised on the notion that Hodnett aided and abetted Miller in discriminating against Yang and that both Hodnett and Miller induced others to subject Yang to harassment and discrimination.

The MHRA only imposes liability for aiding and abetting a violation of the MHRA if a person "knows that another person's conduct constitutes a violation of the MHRA and 'gives substantial assistance or encouragement to the other so to conduct himself.'" Matthews v. Eichorn Motors, Inc., 800 N.W.2d 823, 830 (Minn. Ct. App. 2011). Because Yang cannot make out a prima facie case of discrimination against any of the defendants, her aiding and abetting claims fail as a matter of law. See id. ("[A] viable discrimination claim is a prerequisite to a claim of aiding and abetting discrimination.").

## E. Cost Judgments

Yang appeals the district court's entry of cost judgments against her, contending that because her appeal is pending, it is impossible to determine who the prevailing party is. We review an award of costs for abuse of discretion. See Beaulieu v. Stockwell, 46 F.4th 871, 879 (8th Cir. 2022). Unless a federal statute, the federal rules, or a court order provides otherwise, "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The district court did not abuse its discretion in awarding costs to RHI even though Yang previously filed a notice of appeal because "a court still has the power to award costs when an appeal on the merits is pending." See Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 930 (8th Cir. 2011) (determining district court's award of costs was warranted despite plaintiff's unsupported assertions that costs could not be awarded after plaintiff filed notice of appeal). We affirm the district court's entry of a cost judgment against Yang in favor of RHI.

Because we reverse the district court's grant of summary judgment as to Yang's battery claim, we also reverse the entry of a cost judgment in favor of Miller, who is no longer the prevailing party as to that claim. See Pottgen v. Mo. State High Sch. Activities Ass'n, 103 F.3d 720, 723-24 (8th Cir. 1997) (a party "cannot qualify as a prevailing party if the only basis for his claim of success on the merits is a judgment that has been reversed on appeal").

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court decisions, except for the dismissal of Yang's claim of battery and the entry of a cost judgment in favor of Miller.  We deny as moot Yang's two motions to correct her brief and to supplement the record. We reverse and remand Yang's battery claim to allow the district court to determine whether to exercise supplemental jurisdiction over the claim in accordance with 28 U.S.C. § 1367(c)(3).  We also reverse and remand for proceedings consistent with this opinion the entry of a cost judgment in favor of Miller.

_____